# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 9, 2001 Session

## RICHARD L. JOHNSON, et al. v. STONEY R. HUNTER, et. al.

### Appeal from the Circuit Court for Davidson County
### No. 95C-1573     Thomas Brothers, Judge

---

### No. M2000-03099-COA-R3-CV - Filed October 25, 2001

---

DAVID H. WELLES, SP.J., dissenting.

I respectfully dissent from the majority's holding that, under the theory of quantum meruit, the correct division of the attorney's fees at issue in this case results in the appellee, Denty Cheatham, receiving $200,000.

I agree with the majority that the correct application of the theory of quantum meruit requires us to focus on the value of the benefit conferred, rather than on the value of the services to the one who performs them. However, the majority appears to misapprehend the key inquiry in determining this issue: that is, the identity of the party on whom the benefit is conferred. In the context of this case, the proper inquiry is not the value of the benefit conferred by Mr. Cheatham on his clients. As noted by the majority, that issue was settled by a fee agreement between Mr. Cheatham, Wolff Ardis and their mutual client. That agreement is not at issue in this case. Rather, the proper inquiry must focus on the value of the benefit that Denty Cheatham conferred on Wolff Ardis in conjunction with his associating that firm regarding the Johnson v. Hunter litigation.

Obviously, the value that Mr. Cheatham initially conferred on Wolff Ardis was the opportunity to participate in a large products liability case with the potential for a significant contingency fee. That opportunity, I think, should be given some consideration in determining Mr. Cheatham's portion of the fee under the theory of quantum meruit. Without Mr. Cheatham's efforts to seek out and associate Wolff Ardis on the litigation, Wolff Ardis would not be entitled to any of the fee it now seeks to have divided. Wolff Ardis benefitted from Mr. Cheatham's attorney-client relationship with the plaintiffs, by the research he conducted on their behalf to determine what other lawyer(s) to employ in the case,[1] and by his continued work on the case up until the point he was allowed to withdraw from the litigation. Wolff Ardis also benefitted from Mr. Cheatham's ability to perform as local counsel. Clearly, Wolff Ardis needed local counsel in Nashville: hence the

---

[1] The trial court noted that the "novel and difficult questions of law" presented by the litigation "required Cheatham to not only use his own skills as an attorney but also required him to use his best efforts to find an associate who was familiar with products liability cases."

association of Bass Berry & Sims after Mr. Cheatham's withdrawal. Thus, I think that the theory of quantum meruit requires us to quantify, in some fashion, the value of all of the benefits Mr. Cheatham conferred on Wolff Ardis.

The majority states that "we do not believe that in the circumstances of this case a mathematical solution would comport with the equities involved." However, a non-mathematical approach inevitably leads to an arbitrary calculation of how to divide a finite number of dollars. Given that the fee in this case was determined on the basis of a percentage of the recovery, and given that all of the law firms involved intended that each of their shares of the fee would be determined on a percentage basis, a percentage of the fee based on the value of the benefit that Mr. Cheatham conferred on Wolff Ardis seems to me the proper application of quantum meruit to this case. Accordingly, I conclude that Denty Cheatham is entitled to a specific percentage of the contingency fee. Furthermore, although the majority focuses on the value of Mr. Cheatham's legal services in the context of whether his fee is "reasonable" within the parameters set forth in Disciplinary Rule 2-106, I think that we should also consider Disciplinary Rule 2-107, which sets forth the parameters for the division of fees among lawyers. After all, it is the division of the single contingency fee between Mr. Cheatham and Wolff Ardis which is at issue.[2]

Disciplinary Rule 2-107 provides, in pertinent part, that the division of the fee should be made "in proportion to the services performed and responsibility assumed by each [lawyer]." There is no question but that, in the products liability litigation, Wolff Ardis performed substantially more services and undertook more responsibility than did Mr. Cheatham. The division of the fee should reflect that inequality. Indeed, we may look to Wolff Ardis' apparent estimation to assist us in determining how great the inequality was. After Mr. Cheatham withdrew from the products liability case, Wolff Ardis associated Bass Berry & Sims as local counsel, "to assume the role and responsibilities" previously undertaken by Mr. Cheatham.[3] Wolff Ardis agreed to pay Bass Berry & Sims a fee of seven and one-half percent of the fee eventually recovered by Wolff Ardis. Bass Berry and Sims spent 850 hours on the products liability lawsuit. According to the trial court, Denty Cheatham spent "at least 1,500 hours in his representation of plaintiffs." If Wolff Ardis considered 850 hours worth seven and one-half percent of their fee, I would conclude that fifteen percent is a reasonable estimation of the value of the benefit conferred by almost twice that many hours.[4]

However, Mr. Cheatham's services and responsibilities were greater in scope at the outset of this litigation than were those of Bass Berry & Sims when that firm was employed, because Mr.

---

[2]Although this Court initially remanded this case "to make a reasonable division of the contingency fee under the theory of quantum meruit and based on the factors listed in DR 2-106," we are not thereby precluded from considering additional ethical considerations that may be applicable.

[3]See Brief of Appellants Patrick M. Ardis and Wolff Ardis, P.C., filed Feb. 16, 1999, p. 57.

[4]Although the majority describes the 1,500 hours as a "guesstimate," the trial court noted that Mr. Cheatham "did not regularly keep detailed hourly billing records, especially in contingent fee cases," and that "[t]the estimate by Cheatham of the hours he expended was conservative."

Cheatham initially held the primary attorney-client relationship. Indeed, the trial court noted that "[t]here was a unique relationship between Cheatham and plaintiffs since Mrs. Johnson worked for him and clearly relied upon his counsel and guidance." Every lawyer understands the value and significance of the attorney-client relationship and how that relationship fosters the successful conclusion of any course of legal representation. In my opinion, Mr. Cheatham's share of the legal fee should be increased to some extent on the basis of his services and responsibilities in fostering and maintaining this crucial relationship at the outset of the litigation.[5]

In light of the foregoing, I would establish Mr. Cheatham's portion of the fee at twenty percent of the total fee, for a total fee to him of $284,544.51 (plus interest), with the remainder of the fee going to Wolff Ardis (subject to that firm's agreement with Bass Berry & Sims).

_____
DAVID H. WELLES, SPECIAL JUDGE

---

[5]As noted by the trial court, Mr. Cheatham's "contributions during the early stages of the case were valuable and meaningful."